UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Deutsche Bank National Trust Company, *Trustee for the Holders of Harborview 2005-14 Trust*,<br><br>Plaintiff,<br><br>v.<br><br>Pacific Sunset Village Homeowners Association, *et al.*,<br><br>Defendants. | Case No. 2:16-cv-002174-KJD-NJK<br><br>ORDER |

Presently before the Court is Plaintiff's Supplemental Motion for Summary Judgment (ECF No. 106). Defendants filed a response in opposition (ECF No. 107).

I.  **FACTS and PROCEDURAL HISTORY**

   **A. Procedural History**

Plaintiff Deutsche Bank filed the present action on September 14, 2016, seeking a declaration that its deed of trust had not been extinguished by Defendants' HOA foreclosure sale. On September 30, 2019, the Court granted summary judgment to Defendants finding that Pacific Sunset's foreclosure extinguished Deutsche Bank's lien because Deutsche Bank failed to make a valid tender of the superpriority amount. On appeal, the Ninth Circuit Court of Appeals vacated the judgment finding that the Nevada Supreme Court, after this Court had issued its judgment, identified a "generally accepted exception" to the rule: the holder of a first deed of trust is not obligated to tender payment if the tender would be rejected—that is, if the tender would be futile. (ECF No. 100 at 4) (*citing 7510 Perla Del Mar Ave. Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 351 (Nev. 2020)). The Ninth Circuit then remanded for this Court to consider whether Deutsche Bank meets the exception to the tender requirement. *Id.* Plaintiff Deutsche Bank then filed the

present motion for summary judgment addressing *Perla* and the Court considers its arguments.

### B. Facts

On May 3, 2005, Lisa Galanti purchased property located at 2995 East Sunset Road #103, Las Vegas, Nevada 89120 ("the Property"). This purchase was made by way of a loan in the amount of $168,000.00 evidenced by a note and secured by a deed of trust ("senior deed of trust"), which was recorded on May 23, 2005. Bank of America, N.A. ("BANA"), was the beneficiary of the deed of trust and the servicer. Eventually, the deed of trust was assigned to Plaintiff Deutsche Bank. The Property was subject to Pacific Sunset's Declaration of Covenants, Conditions and Restrictions and Reservation of Easements ("the CC&Rs") which required payment of assessments.

On March 27, 2012, Pacific Sunset Village Homeowners' Association, through its agent, Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien. The notice indicated that the amount owed to Pacific Sunset was $1,943.50, which includes late fees, collection fees and interest in the amount of $843.50.

On May 10, 2012, Pacific Sunset, through its agent NAS, recorded a notice of default and election to sell to satisfy the delinquent assessment lien in the amount of $3,179.50. The notice did not specify the superpriority amount of nine months of unpaid assessments. Prior to the HOA foreclosure, and in response to the notice of default, BANA, the servicer of the loan, retained Miles Bauer, Bergrstrom & Winters, LLP ("Miles Bauer") to tender payment of the superpriority portion of the HOA's lien.

By June 2012, Mr. Rock Jung, an attorney employed by Miles Bauer, had contacted NAS in an attempt to pay off the superpriority lien. *(* ECF No. 106-1, Decl. Rock Jung, Ex. A, ¶ 7.) Mr. Jung would typically send a first letter to NAS identical to the letter he sent in this case seeking the superpriority portion of the HOA lien. (*Id.* at ¶¶ 4, 7.) If Mr. Jung received a response from NAS containing a ledger, or if he was able to otherwise calculate the superpriority amount of the lien, which he calculated as nine months of HOA assessments for the period preceding the recording of the notice of default, he would send a check for that amount to NAS along with a form letter stating the check was intended as a superpriority tender. (*Id.* at ¶¶ 5, 7.)

On each occasion that Mr. Jung sent a check to NAS, NAS rejected the check and returned it to Miles Bauer uncashed. (*Id.* at ¶ 8.) NAS had rejected such checks hundreds of times prior to June 2012, and NAS had never accepted a check from Miles Bauer that was accompanied by the letter Miles Bauer typically attached to the check. (*Id.*) Mr. Jung also communicated with representatives of NAS prior to June 2012 including Susan Moses of NAS. (*Id.* at ¶ 9.) Those representatives informed Mr. Jung that they did not believe the superpriority component of an HOA's lien came into existence until after the first deed of trust was foreclosed. (*Id.*) They also informed him NAS believed the superpriority lien (once it came into existence) included certain attorney fees and costs that Mr. Jung did not include in the checks sent to NAS. (*Id.*) Based on those beliefs, NAS informed Mr, Jung they would reject any checks for less than the full HOA lien amount if those checks were accompanied by the letter Miles Bauer typically sent with the checks, which included language that the check was considered "payment in full." (*Id.*) In Mr. Jung's experience, NAS's response to the letters and checks Mr. Jung would send was the same no matter what HOA it represented. (*Id.* at ¶ 10.) Representatives of NAS always communicated that their policies were the same regardless of the HOA NAS represented. (*Id.*)

On June 13, 2012, Jung, on behalf of Miles Bauer and BANA, sent NAS a letter requesting the amount of the superpriority lien and offering to pay that sum upon presentation of adequate proof of the same by the HOA. (*Id.* at 7.) NAS did not provide a ledger or other information by which the superpriority portion of the lien could be calculated. As a result, neither BANA nor Miles Bauer mailed a check for the superpriority amount to NAS.

On January 9, 2013, Pacific Sunset through its agent NAS, recorded a notice of trustee's sale, which was scheduled for February 1, 2013. The notice stated that the amount due to Pacific Sunset was $5,077.67 but did not identify the superpriority amount claimed by Pacific Sunset. The foreclosure sale was conducted on February 1, 2013. The Trust purchased the Property at the sale for $5,790.00. On June 25, 2014, the Property was sold to Saticoy Bay.

### 1. Supplemented Facts

Plaintiff has now supplemented the record in this case as follows. Trial testimony in *Perla*, provided by Chris Yergensen and Susan Moses of NAS and Rock Jung of Miles Bauer

1  was that NAS's policy in 2012 was to reject any check for less than the full lien amount that
2  contained conditions, and that NAS had already systematically rejected numerous checks from
3  Miles Bauer. *(* ECF No. 106-2 at 27, 106-3 at 47.)  Susan Moses of NAS testified that in 2012
4  NAS would systematically reject Miles Bauer's checks. (*Id.*, Ex. B at 84.) Rock Jung then
5  testified that by March 2012 he had attempted to send superpriority tender checks to NAS around
6  a thousand times, and NAS would always reject the check unless it paid off the entire HOA lien.
7  (*Id.*, Ex. C at 136.)

8        Next, in *U.S. Bank Natl. Assn., Tr. to Wachovia Bank, N.A. v. SFR Investments Pool 1,*
9  *LLC*, 464 P.3d 125 (Nev. 2020) ("*Wachovia*"), the Nevada Supreme Court held that NAS had a
10  known policy of rejecting tender based solely on evidence that NAS joined an arbitration brief
11  stating it "did not believe the superpriority component of an HOA's lien came into existence
12  until after the first deed of trust was foreclosed." *Id.* at 125 (unpublished disposition). Plaintiff
13  has attached the arbitration brief and joinder referenced in *Wachovia*, to its supplement. *(*ECF
14  No. 106-4.)

15        Similarly, the Nevada Supreme Court found that trial testimony in *SFR Investments Pool*
16  *1, LLC v. Bank of Am., N.A.*, 459 P.3d 880 (Nev. 2020), established that "it was NAS's business
17  policy to refuse to respond to any letters from Miles Bauer requesting superpriority payoff
18  amounts and to have its receptionist reject any check for less than the full lien amount, which
19  included the subpriority components and NAS's own fees and costs." *Id*. Plaintiff attaches that
20  trial testimony. *(*ECF Nos. 106-5 at 41-42, 106-6 at 65, 69, 75-76.)

21  **II.    STANDARD FOR SUMMARY  JUDGMENT**

22        The purpose of summary judgment is to avoid unnecessary trials by disposing of factually
23  unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Nw.*
24  *Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only
25  where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a);
26  *Celotex*, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First,
27  the moving party must demonstrate the absence of a genuine issue of material fact. The burden
28  then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for

1  trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue
2  of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the
3  nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views
4  the evidence and draws all available inferences in the light most favorable to the nonmoving party.
5  *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to
6  survive summary judgment, the nonmoving party must show more than "some metaphysical doubt
7  as to the material facts." *Matsushita*, 475 U.S. at 586.

### III.  ANALYSIS

The excused tender doctrine applies in this action if two conditions are satisfied: (1) the homeowners' association agent, NAS, had a known policy of rejecting any payment for less than the full lien amount; and (2) Miles Bauer and BANA had knowledge of this business practice. *See 7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 351 (Nev. 2020); *Nationstar Mortg., LLC v. Sahara Sunrise Homeowners Ass'n*, Case No. 2:15-cv-01597-MMD-NJK, 2023 WL 5017237, at *3 (D. Nev. Aug. 3, 2023).

Both conditions are satisfied here. At the time of the HOA foreclosure sale, NAS had a policy of rejecting any tender offers that did not include all of the fees that NAS added in addition to the superpriority lien amounts. (ECF No. 106-1 at 3-4; 106-2 at 27; 106-3 at 47; 106-4.) Miles Bauer and BANA were aware of this policy at the time of the HOA foreclosure sale. (*Id.*) As a result, the HOA foreclosure did not extinguish the deed of turst. *See Perla Del Mar*, 458 P.3d at 351-52; *see also Bank of Am., N.A. v. Lakeview Owners' Ass'n*, Case No. 2:16-cv-00635-APG-BNW, 2020 WL 4586861, at *2 (D. Nev. Aug. 7, 2020), *aff'd*, Case No. 20-16626, 2021 WL 5359580 (9th Cir. Nov. 17, 2021) (applying *Perla* and finding that a deed of trust was not extinguished by a homeowners' association foreclosure sale); *Bank of Am., N.A. v. Bernini Dr Tr.*, Case No. 2:16-cv-00474-APG-BNW, 2020 WL 1044005, at *2 (D. Nev. Mar. 3, 2020), *aff'd sub nom. Bank of Am., N.A. v. Alessi & Koenig, LLC*, 840 F. App'x 217 (9th Cir. 2021).

Defendants' argument that Plaintiff has not met its burden, because the evidence Plaintiff proffers to support its argument comes from other cases not concerning the Property, is unpersuasive because "evidence from other matters can[] be used to support a position in a

different matter." *Wachovia*, 464 P.3d 125 (Table), 2020 WL 3003017, at *1. *Wachovia* is particularly instructive in this case, presenting nearly identical facts as those faced here. *Id.* Plaintiff has supplemented its evidence with the same arbitration brief and joinder that it filed in *Wachovia.* (ECF No. 106-4.) The Nevada Supreme Court concluded that under these nearly identical circumstances the evidence was sufficient to demonstrate that NAS had a 'known policy of reject[ion]' sufficient to excuse formal tender under *7510 Perla Del Mar Avenue Trust*." *Wachovia*, 464 P.3d 125 (Table), 2020 WL 3003017, at *1.

In an effort to manufacture a material issue of fact for trial, Defendants cite to the deposition of NAS's 30(b)(6) witness, Sarah Moses, who testified:

> Q. Okay. Let's talk about the 2012 time frame. Did NAS have a policy, practice or procedure with respect to requests for super-priority payoffs from deed of trust holders?
>
> A. If someone would have called and asked for a payoff, we would have directed them to our online system, and they would have been able to request the information through that system.

(ECF 107-1 at 10.) Defendants claim that this answer directly contradicts Plaintiff's statement that NAS refused to provide a ledger or other information from which the superpriority portion of the lien could be calculated. (ECF No. 107 at 4.) However, Defendants provide no admissible evidence: (1) that Miles Bauer ever called NAS, as opposed to sending written correspondence; (2) that the term "payoff" would have included information from which Miles Bauer or BANA could have calculated the superpriority lien amount; and (3) even if they had provided the information that NAS would have accepted a tender that included conditional language. Further, the issue is not whether NAS obstructed the lienholder from determining the superpriority amount, but whether NAS had a known policy of rejecting tenders that did not contain the full lien amount (it did) and whether Miles Bauer and BANA knew of the rejection policy (they did).

Defendants have not raised any genuine issue for trial about the fact that they routinely rejected tenders from Miles Bauer and BANA that only contained the superpriority lien amount and contained conditions with which NAS disagreed. As a result, the Court grants Plaintiff summary judgment on its quiet title claim based on its excused tender argument.

### IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (#106) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court declares that the Deed of Trust recorded as 20050523-0000484 encumbering 2995 East Sunset Rd. #103-1, Las Vegas, NV 89120 which was later transferred to Deutsche Bank National Trust Company, *Trustee for the Holders of Harborview 2005-14 Trust*, was not extinguished by the HOA foreclosure sale conducted on February 1, 2013.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Plaintiff/Counterdefendant Deutsche Bank National Trust Company, *Trustee for the Holders of Harborview 2005-14 Trust*, and against Defendants and Counterclaimant.

DATED: March 31, 2025

Kent J. Dawson
United States District Judge